# In the United States Court of Federal Claims

No. 20-469C

(Filed Under Seal: July 23, 2020)
(Reissued for Publication: July 31, 2020)[1]

```
*************************************
                                    *
GOLDSCHMITT AND ASSOCIATES,         *
LLC,                                *
                  Plaintiff,        *
                                    *
v.                                  *
                                    *
THE UNITED STATES,                  *
                  Defendant,        *
                                    *
and                                 *
                                    *
WITS SOLUTIONS, INC.,               *
                  Intervenor-Defendant *
                                    *
*************************************
```

Motion for Judgment on the Administrative Record; MJAR; RCFC 52.1; Bid Protest; Post-Award Bid Protest; Arbitrary and Capricious Review; Deference; Rational Basis; Prejudice; Permanent Injunction.

*Aron C. Beezley*, with whom were *Patrick R. Quigley*, *Lisa A. Markman*, and *Sarah S. Osborne*, Bradley Arant Boult Cummings LLP, Washington, D.C., for Plaintiff Goldschmitt and Associates, LLC.

*Tanya B. Koenig*, Trial Attorney, with whom were *Douglas K. Mickle*, Assistant Director, *Robert E. Kirschman, Jr.*, Director, Commercial Litigation Branch, *Joseph H. Hunt*, Assistant Attorney General, Department of Justice, *Ada Mitrani*, Trial Attorney, and *Brighton Springer*, Trial Attorney, U.S. Department of Energy, Washington, D.C., for Defendant.

---

[1] The Court issued this decision under seal on July 23, 2020, and invited the parties to submit proposed redactions of any proprietary, confidential, or otherwise protected information on or before July 30, 2020. On July 31, 2020, the parties filed a notice indicating that they had no redactions. Dkt. 31. Accordingly, this unredacted version of the opinion is released to the public in its entirety.

*David R. Warner*, with whom were *Barbara S. Kinosky*, *Heather B. Mims*, and *Tyler J. Freiberger*, Centre Law & Consulting, LLC, Vienna, VA, for Intervenor-Defendant WITS Solutions, Inc.

<u>OPINION AND ORDER</u>

WHEELER, Judge.

This is a post-award bid protest in which Plaintiff Goldschmitt and Associates, LLC challenges the United States Department of Energy's decision to award a contract for Freedom of Information Act ("FOIA") support services to Intervenor-Defendant WITS Solutions, Inc. Goldschmitt claims that DOE's decision to award the contract to WITS was irrational, inadequately documented, and contrary to the terms of the solicitation and the applicable law. Now before the Court are Goldschmitt's and the Government's cross-motions for judgment on the administrative record ("MJARs") and Goldschmitt's motion for a permanent injunction. For the reasons that are explained below, Goldschmitt's motions are DENIED and the Government's motion is GRANTED.

<u>Background</u>

I.    <u>The Solicitation</u>

On December 18, 2018, DOE issued a request for proposals "soliciting offers for Freedom of Information Act (FOIA) support services." Administrative Record ("AR") 70. Specifically, DOE hoped to find a contractor to assist it with processing FOIA requests and administering FOIA programs. Id. DOE needed a contractor to assist it in responding to FOIA requests because it gets "a high volume" of them and "cannot process the[m] . . . without outside assistance." AR 52.

The solicitation required offerors to submit three-volume proposals. AR 101. Volume I was to contain "Offeror and Other Documents," Volume II was the technical proposal, and Volume III was the price proposal. Id. The solicitation explained that the offeror's technical proposals should contain information addressing four criteria: the offeror's (Criterion 1) technical approach, (2) staffing approach, (3) relevant corporate experience, and (4) past performance. AR 102. The solicitation further explained that DOE intended "to award a single contract to the . . . Offeror whose proposal is responsive to the solicitation and determined to be the best value and most advantageous to the Government." AR 111. The technical evaluation criteria—the four criteria in Volume II of the offerors' proposals—were "significantly more important" than price to DOE's assessment of the proposals. Id.

Of the four criteria themselves:

> Criterion 1 – Technical Approach [was] more important that [sic] all other criteria individually.
> Criterion 2 – Staffing Approach [was] the second most important criteria.
> Criterion 3 – Relevant Corporate Experience [was] the third most important criteria.
> Criterion 4 – Past Performance [was] the fourth most important criteria.

AR 111–12. Criteria 1–3 were to be evaluated "based on an adjectival rating of Outstanding, Good, Adequate, Marginal, and Unacceptable." AR 112. Criteria 4, meanwhile, would be given a rating of "Favorable," "Unfavorable," or "Neutral." Id. Price was evaluated for reasonableness and completeness. Id.

In this protest, Goldschmitt challenges DOE's evaluation of its and WITS's technical approach, relevant corporate experience, and past performance. Dkt. 24-1 at 13, 21, 26. Accordingly, further background on how DOE evaluated these three criteria will prove helpful.

With respect to Criterion 1, the technical approach, the solicitation explained that offerors would be evaluated based on their demonstrated ability to perform the work described in the solicitation's Performance Work Statement ("PWS"). AR 112. The PWS included three tasks: (1) FOIA program management support; (2) FOIA data collection and decision analysis; and (3) FOIA strategic planning, performance management, and related reporting. AR 131–34. The solicitation instructed offerors to use their proposals to demonstrate their ability to perform the PWS tasks. AR 112. DOE said that it would evaluate offerors "on the adequacy of staffing, timely scheduling, complete deliverables, and cost control." Id. Offerors would be assigned "significant strengths, strengths, significant weaknesses, weaknesses, and deficiencies" based on the contents of their proposals; these strengths and weaknesses would then be used to give each offeror a single adjectival rating for this criterion. Id.

Criterion 3, relevant corporate experience, evaluated the offeror's and its subcontractors' relevant experience. AR 113. In both cases, the solicitation explained that relevant experience was experience that was "similar in size, scope and complexity" to the tasks described in the PWS. Id. Contracts of similar size were defined as those with similar "dollar value and contract duration." Id. Scope was evaluated based on whether the type of work performed in the previous contracts was similar to the work described in the PWS. Id. Finally, complexity meant that the previous contracts posed similar "challenges and risk" as the solicitation. Id. All of these factors combined would lead to a single adjectival rating for this criterion.

3

Finally, under Criterion 4, past performance, DOE evaluated offerors' "performance under existing and prior contracts that ha[d] been completed within the past three (3) years for similar products or services."   Id.   Offerors were instructed to provide three past performance references that could speak to the offeror's and any subcontractor's performance on contracts of similar size, scope, and complexity.  AR 105.  The solicitation explained that DOE would review all reference information that it received and might "solicit past performance information from any other available sources."  AR 113.  This information would be used to assign offerors a single adjectival rating for this criterion.

Ultimately, the DOE ranked the top six of the fifteen proposals it received in response to the solicitation; proposals were ranked "taking into account both price and non-price factors."  AR 757; Dkt. 25 at 13–14.  WITS had the top-ranked proposal and was awarded the contract on January 31, 2020.  AR 756–57, 760–61.  Goldschmitt's proposal was ranked second.  AR 760.  In debriefing Goldschmitt, DOE used the following chart to compare Goldschmitt's and WITS's technical and price ratings:

|  | Goldschmitt | WITS Solutions, Inc. |
|---|---|---|
| **Criterion 1** | Outstanding | Outstanding |
| **Criterion 2** | Good | Good |
| **Criterion 3** | Good | Good |
| **Criterion 4** | Favorable | Favorable |
| **Total Evaluated Price** | $9,484,863.20 | $8,237,888.000 |

Id.  The DOE explained that Goldschmitt and WITS had similar proposals "in terms of ratings for non-price factors," so WITS got the contract because of the "significant savings" of more than $1.2 million its proposal provided the Government.  AR 760–61.

II.   Procedural History

Goldschmitt filed a bid protest at the Government Accountability Office on February 10, 2020.  AR 785.  The GAO partially dismissed that protest on February 20, 2020 and denied the remainder of it on April 15, 2020.  AR 889, 1047.

Goldschmitt then filed its complaint in this Court on April 20, 2020.  Dkt. 1.  Shortly afterwards, WITS intervened.  See Dkt. 12.  The Government filed the administrative record on May 12, 2020.  Dkt. 23.  On May 26, 2020, Goldschmitt filed its motion for judgment on the administrative record and motion for a permanent injunction.  Dkt. 24.  The Government filed its cross-motion for judgment on the administrative record and response to Goldschmitt's motion on June 9, 2020.  Dkt. 25.  Goldschmitt filed its response and reply on June 16, 2020.  Dkt. 26.  On June 23, 2020, the Government filed its reply.

Dkt. 27.  The cross-motions for judgment on the administrative record and Goldschmitt's motion for a permanent injunction are now fully briefed and ripe for decision.[2]

Analysis

I.     <u>Cross-Motions for Judgment on the Administrative Record</u>

     A.  <u>Standard of Review</u>

The Tucker Act grants this Court subject-matter jurisdiction over bid protests.  28 U.S.C. § 1491(b)(1).  In a bid protest, the Court reviews an agency's decision pursuant to the standards set out in the Administrative Procedure Act ("APA").  28 U.S.C. § 1491(b)(4); 5 U.S.C. § 706.  The APA provides that "a reviewing court shall set aside the agency action if it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).

An agency's decision does not violate the APA if the agency "provided a coherent and reasonable explanation of its exercise of discretion."  <u>Impresa Construzioni Geom. Domenico Garufi v. United</u> States, 238 F.3d 1324, 1332–33 (Fed. Cir. 2001).  Further, an agency must articulate a "rational connection between the facts found and the choice made."  <u>Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.</u>, 463 U.S. 29, 43 (1983) (citation omitted).  The Court's review is "highly deferential" to the agency as long as the agency has rationally explained its award decision.  <u>Bannum, Inc. v. United States</u>, 91 Fed. Cl. 160, 169–70 (2009).

Even if the agency acted without a rational basis, the Court cannot grant relief unless the agency's action prejudiced the protestor.  <u>See</u> <u>id.</u> at 170; <u>see also</u> <u>Data Gen. Corp. v. Johnson</u>, 78 F.3d 1556, 1562 (Fed. Cir. 1996).  An erroneous agency action prejudices a protestor if, but for the agency's error, there was a "substantial chance" that the agency would have awarded the contract to the protestor.  <u>Alfa Laval Separation, Inc. v. United States</u>, 175 F.3d 1365, 1367 (Fed. Cir. 1999) (internal citation omitted); <u>see also</u> <u>Bannum</u>, 91 Fed. Cl. at 170.

     B.  <u>DOE Rationally Evaluated the Proposals</u>

In its motion for judgment on the administrative record, Goldschmitt argues that DOE made three overarching errors in evaluating Goldschmitt's and WITS's proposals.  First, Goldschmitt claims that DOE irrationally evaluated Goldschmitt's and WITS's

---

[2] Although the Court explicitly included WITS in its order setting a briefing schedule in this case, Dkt. 13 at 1, and although WITS filed applications for access to protected material, <u>e.g.</u>, Dkt. 20, WITS did not participate in the briefing or contribute at oral argument.

5

technical approaches. Next, Goldschmitt says that DOE irrationally and unequally evaluated the portions of the proposals dealing with relevant corporate experience. Finally, Goldschmitt argues that DOE's evaluation of WITS's past performance was irrational. The Court is not persuaded by these arguments.

### 1. Technical Approach

Goldschmitt asserts that DOE irrationally deemed its and WITS's technical approaches "roughly equivalent in merit." Dkt. 24-1 at 26. Both Goldschmitt and WITS received a rating of "outstanding" for their technical approaches. AR 525–27, 633–34. Goldschmitt's rating was based on the agency's determination that it had three "strengths" and no "weaknesses"; WITS's was based on its two "strengths" and no "weaknesses." AR 526–27, 634. Goldschmitt argues that since it had three strengths to WITS's two, DOE was irrational in assigning them the same adjectival rating. Dkt. 24-1 at 29–30. Moreover, Goldschmitt says it should have actually received four strengths, rather than three. Id. at 30–31. Finally, Goldschmitt claims that its proposal provided a greater benefit to DOE than WITS's proposal, and the two proposals should therefore not have received the same adjectival rating. Id. at 32–33. None of these arguments is persuasive.

Goldschmitt's first objection is that it and WITS both received "outstanding" ratings for their technical approaches, despite Goldschmitt having one more strength than WITS. However, decisions about how to rate offerors' technical approaches fall squarely within an agency's broad discretion. E.W. Bliss Co. v. United States, 77 F.3d 445, 449 (Fed. Cir. 1996). Accordingly, this Court gives great deference to "evaluations of proposals for their technical quality" by "an agency's subject-matter experts." RX Joint Venture, LLC v. United States, 145 Fed. Cl. 207, 213 (2019). The Court's role is merely "to ensure that the [agency] examined the relevant data and articulated a 'rational connection between the facts found and the choice made.'" Id. (quoting WorldTravelService v. United States, 49 Fed. Cl. 431, 441 (2001)). Here, offerors could receive "outstanding" ratings if their "proposal demonstrate[d] a comprehensive understanding of the contract requirements and a highly effective approach to perform the work that result[ed] in an extremely high probability of successful contract performance with a likelihood that performance expectations w[ould] be significantly exceeded." AR 418. DOE determined that Goldschmitt, with three strengths, and WITS, with two, both warranted this rating. AR 525–27, 633–34. Nothing in the AR indicates that this decision was irrational, so the Court will defer to DOE's assessment.

Goldschmitt next argues that it should have received four strengths, rather than three. Specifically, Goldschmitt says that its first strength, its understanding and knowledge of FOIA procedures and its ability to help reduce agency backlog, should be considered two strengths: a strength for "understanding and knowledge of FOIA procedures" and a separate strength for "ability to help reduce agency backlog." AR 526–

27; see Dkt. 24-1 at 30.  As the Government correctly observes in its MJAR, this kind of agency decision is the type of "minutiae" this Court does not "second guess."  E.W. Bliss Co., 77 F.3d at 449.  DOE's judgment was that an understanding and knowledge of FOIA procedures and an ability to help reduce FOIA backlog were part and parcel of the same strength.  This was a reasonable determination that the Court will not second guess.[3]

Lastly, Goldschmitt argues that DOE ascribed numerous benefits to its technical approach, and only one to WITS's approach.  This contention flies in the face of the AR. In discussing Goldschmitt's technical approach, the agency discussed numerous benefits that Goldschmitt could supply, such as enhancing FOIA processing and reducing processing time and backlog.  AR 527.  DOE also ascribed numerous benefits to WITS's approach, such as knowledge of FOIA processing and ability to reduce processing time and backlog. AR 633–34.  Given the extensive overlap between the specific benefits DOE ascribed to Goldschmitt's and WITS's proposals, its determination that they both merited an "outstanding" rating for technical approach was eminently reasonable.

DOE rationally evaluated Goldschmitt's and WITS's technical approaches. Goldschmitt's protest cannot be sustained on this basis.

### 2.   Relevant Corporate Experience

In its MJAR and at oral argument, Goldschmitt repeatedly claimed that "[t]he errors in the Agency's evaluation" of the offerors' relevant corporate experience "result[ed] largely from its mechanical approach to the evaluation."  Dkt. 24-1 at 13.  In support of its assertion that a "mechanical" application of the solicitation criteria is a bad thing, Goldschmitt cites Olympic Building Services, Inc., a GAO case.  B-285351, 2000 CPD ¶ 178, at *4, *6 (Comp. Gen. Aug. 17, 2000).  It is true that in that case, the GAO criticized the agency for, among other things, its "mechanical formula for scoring the experience factor" outlined in the solicitation.  Id. at *4.  However, a broader reading of the GAO's opinion makes clear that it was not concerned with the agency's wooden evaluation *per se*, but rather with "the arbitrary and inflexible approach reflected by [its] mechanical evaluation."  Id. at *8.  The problem was not that the agency strictly followed the terms of the solicitation, but that the terms themselves were arbitrary, and the agency strictly followed them anyway.  See id. at *6, *8.

---

[3] Goldschmitt argues that these should be two strengths in part because the agency separated them with the word "also."  Dkt. 24-1 at 30.  But if the Court were persuaded by this logic, then Goldschmitt's first strength should actually have been *three* strengths, because DOE noted that Goldschmitt "*also* clearly mapped out an approach that could reasonably result in successful contract performance."  AR 527 (emphasis added). Goldschmitt does not argue for this additional strength in its MJAR, which suggests that it merely disagrees with DOE's assessment, and does not actually believe that "also" signifies an additional strength.

An agency can hardly be criticized for hewing closely to non-arbitrary solicitation criteria.  Indeed, it is desirable for agencies to do so.  What Goldschmitt disparagingly refers to as "mechanical" review helps ensure that contracts are not awarded for illicit reasons and facilitates administrative and judicial review of the bid process.  See Criterion Sys., Inc. v. United States, 144 Fed. Cl. 409, 415 (2019) ("[A]n agency's strict adherence to a deadline places all bidders on an equal footing and avoids the sorts of issues [plaintiff] is seeking to raise here.").

In this case, neither the terms of the solicitation nor DOE's evaluation of the offerors' proposals was arbitrary or capricious.  In its MJAR, Goldschmitt identifies "numerous errors" which it says "led to the irrational result of Goldschmitt and WITS each receiving the same overall [corporate experience] rating."  Dkt. 24-1 at 13.  These errors were DOE's alleged failure to rationally evaluate the offerors' experience with contracts of a similar size, DOE assigning Goldschmitt only a "strength" and not a "significant strength" for a contract that was much larger than the one contemplated in the solicitation, and DOE's decision to assign two weaknesses to Goldschmitt for two corporate experience references that the agency determined to be irrelevant.  Id. at 14, 16–18.  In reality, DOE "provided a coherent and reasonable explanation" for each of these decisions.  Impresa, 238 F.3d at 1333.

Goldschmitt first complains that DOE did not rationally evaluate the size of WITS's corporate experience references.  The AR, however, does not bear out this contention.  In evaluating an offeror's corporate experience references, DOE considered whether the reference showed experience with contracts of a similar size, scope, and complexity as the solicitation.  AR 113.  If a reference demonstrated all three of these factors, it was assigned a "significant strength."  AR 529.  If it demonstrated two out of the three factors, it received a "strength" and if it demonstrated none of them, it was given a "weakness."  AR 528–29.  At the end of this analysis, Goldschmitt was assigned "1 Significant Strength, 3 Strengths, [and] 2 Weaknesses."  AR 528.  WITS received "no Significant Strengths, 5 Strengths, [and] 1 Weakness."  AR 635.  Both companies received a "good" adjectival rating for their corporate experience based on these ratings.  AR 528, 635, 760.  Goldschmitt claims that this was irrational, because DOE's system for assigning strengths and weaknesses "cover[ed] up" the fact that WITS had no experience with contracts of a similar size.  Dkt. 24-1 at 16.  But as the Government correctly notes, "WITS did not receive any significant strengths precisely *because* the agency acknowledged that WITS's past corporate experience did not demonstrate contracts of a similar size."  Dkt. 25 at 24.

The solicitation required that offerors demonstrate corporate experience that was "similar in size, scope and complexity" to the tasks described in the PWS.  AR 113.  DOE considered past experience references that did not demonstrate all three of these factors as less relevant and rated them accordingly.  See, e.g., AR 637–43.  This was a reasonable decision, and DOE extensively documented the manner in which it determined relevancy

and assigned strengths and weaknesses.  E.g., id.  Moreover, DOE's decision that two companies, one with one significant strength, three strengths, and two weaknesses, and the other with five strengths and one weakness, both deserved a "good" adjectival rating was reasonable and extensively documented.  AR 528–35, 635–45.  DOE's evaluation of the size of the offerors' relevant corporate experience was rational.

Goldschmitt next objects to DOE assigning it a "strength" and not a "significant strength" for an experience reference for a contract nearly three times the size of the one contemplated in the solicitation.  The reference at issue was a five-year, $25 million contract to assist the Department of the Interior in processing FOIA appeals.  AR 533–34.  DOE determined that this reference was similar in scope and complexity to the requirements of the PWS, "but not to size as neither the dollar value nor the duration were similar."  AR 534.  Goldschmitt claims this was irrational because of "the obvious fact" that if it "could perform a larger and longer project, it could also perform the shorter and smaller project."  Dkt. 24-1 at 17.  As the Government correctly asserts in its MJAR, though, an agency's determination of what past experience qualifies as relevant past experience is owed deference because it is a decision that falls squarely within the agency's considered discretion.  See Glenn Def. Marine (ASIA), PTE Ltd. v. United States, 720 F.3d 901, 911 (Fed. Cir. 2013); PlanetSpace, Inc. v. United States, 92 Fed. Cl. 520, 539 (2010).  DOE's assessment that the Department of the Interior contract was for a longer time period and much larger dollar amount is undisputed, and it was within its discretion to decide that these differences made the contract less relevant as a reference.

Finally, Goldschmitt argues that DOE irrationally assigned it two weaknesses for corporate experience references that it deemed irrelevant.  Since these references were irrelevant, Goldschmitt says, they cannot be weaknesses, because they do not increase the chances that Goldschmitt would be unable to perform the contract.  Dkt. 24-1 at 17–18.  Goldschmitt is correct that DOE defined a weakness as "A flaw in the proposal that increases the risk of unsuccessful contract performance."  AR 416.  But DOE's determination that submitting irrelevant references was a weakness was reasonable.  An offeror that submitted irrelevant corporate experience references could be seen as having misinterpreted the size, scope, or complexity of the solicitation, which surely increases the chances that it would be unable to perform the contract.  See AR 534–35.

Moreover, even if Goldschmitt could show that DOE was irrational in assigning it weaknesses for irrelevant references, it cannot show that it was prejudiced by DOE's decision.  This is because WITS also received a weakness for an irrelevant reference.  AR 645.  If Goldschmitt's irrelevant references were not weaknesses, then neither was WITS's.  In that case, Goldschmitt would have had one significant strength and three strengths, and WITS would have had five strengths.  DOE could reasonably have given both companies the same adjectival rating, leaving Goldschmitt no better off despite the removal of the two weaknesses.

At base, Goldschmitt simply disagrees with DOE's decisions about its and WITS's relevant corporate experience. However, those decisions were reasonable, and cannot serve as a basis for sustaining Goldschmitt's protest.

### 3. Past Performance

Finally, Goldschmitt argues that DOE unreasonably rated WITS's past performance as "favorable" given that WITS had not performed contracts of a similar size within the last three years. Dkt. 24-1 at 22–23. The solicitation said that past performance would be evaluated based on the offerors' "performance under existing and prior contracts that ha[d] been completed within the past three (3) years for similar products or services." AR 113. In the solicitation's instructions, DOE explained that in evaluating this criterion, it would "focus on information that demonstrates both quality and success of performance relative to the scope, size, complexity and duration to the work described in the PWS." AR 105. Goldschmitt claims that "[t]aken together," these two sections of the solicitation "clearly stated" that DOE considered size to be a crucial element of past performance. Dkt. 24-1 at 22. Because WITS did not have experience with contracts the same size as the solicitation, Goldschmitt says, it has no past performance experience. Id.

Not so. The solicitation made clear that in evaluating past performance, the DOE was not looking for a one-to-one fit between an offeror's prior contracts and the solicitation. All that was required was "similar" experience. AR 113. The instructions section of the solicitation merely advised offerors that factors such as size, scope, and complexity would be important to the DOE's analysis of whether their past performance was similar to the requirements of the solicitation. See AR 105. The instructions, however, do not create an additional, hardline requirement that does not appear in the "Basis for Award" section of the solicitation.

DOE was well aware that WITS had not performed contracts of a similar size in the past three years. AR 645–54. Nonetheless, it found that WITS was entitled to a "favorable" past performance rating because it had performed contracts of similar scope and complexity. See AR 645–47. In DOE's view, this was enough to demonstrate that WITS had past experiences similar to the requirements of the solicitation. See id. For the reasons described above in the Relevant Corporate Experience section, it was reasonable for DOE to determine that past performance of contracts of similar scope and complexity, but not size, was enough to satisfy the requirement that an offeror have experiences similar to the requirements of the solicitation. Therefore, the Court will defer to the agency's judgment.

\*\*\*

DOE's evaluation of each of the technical factors was reasonable and well-documented. The agency ended up with proposals from Goldschmitt and WITS that it

reasonably determined to be technically equivalent.  Based on this determination, it awarded the contract to WITS, because WITS's proposal cost the taxpayer $1.2 million less than Goldschmitt's did.  This decision was neither arbitrary nor capricious.  For these reasons, Goldschmitt's MJAR is DENIED and the Government's MJAR is GRANTED.

II.    Goldschmitt's Motion for a Permanent Injunction

A.  Standard of Review

Under its bid protest jurisdiction, the Court has the power to issue an injunction pursuant to 28 U.S.C. § 1491(b).  See PGBA, LLC v. United States, 389 F.3d 1219, 1223 (Fed. Cir. 2004) ("We give deference to the Court of Federal Claims' decision to grant or deny injunctive relief, only disturbing the court's decision if it abused its discretion.").  In deciding whether to grant a permanent injunction, a court considers (1) whether the plaintiff has succeeded on the merits; (2) whether the plaintiff will suffer irreparable harm without an injunction; (3) whether the balance of the hardships favors an injunction; and (4) whether an injunction is in the public interest.  Id. at 1228–29 (citation omitted).

B.  Goldschmitt Is Not Entitled to a Permanent Injunction

Because Goldschmitt has not succeeded on the merits of its complaint, the Court finds no legally compelling reason to issue an injunction.  Goldschmitt's motion for a permanent injunction is DENIED.

Conclusion

For these reasons, Goldschmitt's MJAR and motion for a permanent injunction are DENIED, and the Government's MJAR is GRANTED.  The Clerk of the Court is directed to enter judgment in favor of the Government and WITS.  No costs.

IT IS SO ORDERED.

s/ Thomas C. Wheeler
THOMAS C. WHEELER
Judge